1  RICHARD LLOYD SHERMAN, ESQ. (STATE BAR NO. 106597)
   ABHAY KHOSLA, ESQ. (STATE BAR NO. 223555)
2  **SHERMAN LAW GROUP**
   9454 Wilshire Boulevard, Suite 850
3  Beverly Hills, California 90212-2911
   Telephone: (310) 246-0321
4  Facsimile:  (310) 246-0305

5

   Attorneys for Defendants CONCENTRADOS SUPERIORES
6  and CODEMET NICARAGUA SOCIEDAD ANONIMA, S.A.

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  JAIRO SEQUEIRA, a citizen of the          **CASE NO. CV13-04332 DMG (FFMx)**
    United States of America,
11                                            **[SPECIAL APPEARANCE]**

12                 Plaintiff,                 **DEFENDANTS CONCENTRADOS
                                              SUPERIORES and CODEMET
13         v.                                 NICARAGUA SOCIEDAD
                                              ANONIMA'S JOINT REPLY TO
14  THE REPUBLIC OF NICARAGUA, a              PLAINTIFF'S OPPOSITION TO
    foreign Country, CITY OF                  MOTION TO DISMISS**
15  CHINANDEGA, a political subdivision of
    the foreign country of the Republic of
16  Nicaragua, CITY OF EL VIEJO, a            Date:      August 30, 2013
    political subdivision of the foreign state Time:      9:30 a.m.
17  of the Republic of Nicaragua,            Judge:     Hon. Dolly M. Gee
    CODEMET NICARAGUA SOCIEDAD               Ctrm.:     "7"
18  ANONIMA, S.A. DBA CODEMET
    INTERNATIONAL, INC., a business
19  entity engaged in business in the United
    States, CONCENTRADOS SUPERIORES
20  S.A., a business entity, AMINTA ELENA
    GRANERA SACASA, an individual,
21  Director of the National Police
    Department of the Republic of
22  Nicaragua, MANUEL ZAMBRANA, an
    individual, Chief of Managua's Police
23  Department VI District, SANTIAGO
    CRUZ, an individual, Commissioner of
24  Managua's Police Department VI,
    FRANCISCO AGUILERA FERRUFINO, an
25  individual, Cfief of Police of
    Chinandega, ALI BOANERGE ESPINOZA
26  JUAREZ, an individual, Chief of Police
    Department of the City of El Viejo
27
                   Defendants.
28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................... 1

II.  DEFENDANTS SATISFIED THE MEET AND CONFER
REQUIREMENTS OF LOCAL RULE 7-3;  IT IS PLAINTIFF
WHO REFUSED TO PARTICIPATE IN GOOD FAITH. ............................... 2

III.  THE DOCTRINES CITED BY PLAINTIFF DO NOT
CONFER PERSONAL JURISDICTION OVER THE DEFENDANTS. ............5

    A.    "The Universality Doctrine Principle" Does not Apply to this Case......... 5

    B.    The Convention against Torture Does Not Apply to this Case.................8

    C.    Plaintiff's Jus Cogens and Law of Nations Arguments are Irrelevant.......9

    D.    The Effects Doctrine is Inapplicable...........................................10

    E.    The Passive Personality Principle is Inapplicable. .................................11

    F.    The Torture Victim Protection Act is Inapplicable...................................11

    G.    The Impact Territoriality Principle is Inapplicable...................................12

    H.    The Foreign Sovereign Immunities Act is Inapplicable ......................... 12

IV.  PLAINTIFF'S OPPOSITION CONFIRMS THAT DEFENDANTS
HAVE  NO MINIMUM CONTACTS WITH CALIFORNIA. ..........................13

V.  JOINT VENTURE LIABILITY ...................................................... 16

VI.  DEFENDANT CODEMET WAS NOT PROPERLY SERVED. ......................17

VII.  AT LEAST SIX CLAIMS FOR RELIEF MUST BE DISMISSED
FOR FAILURE TO STATE A CLAIM ...........................................................18

    A.    The 2nd Claim for Relief for Conversion. .................................................18

    B.    8th Claim for Relief for Assault & Battery .............................................19

    C.    The 13th Claim for Negligent Interference with Contract. ......................19

    D.    The 14th Claim for Relief for Breach of Contract. ...................................20

    E.    The 16th and 17th Claims for Relief for IIED .............................................20

VIII.  CONCLUSION ............................................................................ 21

**TABLE OF AUTHORITIES**

•   **CASES**

Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.,
    2009 WL 3346784 (C.D. Cal. 2009) .................................................................. 4

Aldana v. Del Monte Fresh Produce,
    416 F.3d 1242 (11th. Cir. 2005) ........................................................ . 5,6

Becker v. IRM Corp.
    38 Cal.3d 454 (1985) .......................................................................... 20

Borzeka v. Heckler,
    739 F.2d 444 (9th Cir. 1984) ............................................................17

Brand v. Menlove Dodge,
    796 F.2d 1070 (9th Cir. 1986) ........................................................14

Cabello v. Fernandez-Larios,
    402 F.3d 1148 (11th Cir. 2005) ........................................................5,6

Casualty Assurance Risk Ins. Brokerage Co. v. Dillon,
    976 F2d 596 (9th Cir. 1992) ............................................................10

Goehring v. Superior Court (Bernier)
    62 Cal. App. 4th 894 (1998) ............................................................16

John Doe I. v. UNOCAL,
    395 F.3d 932 (9th Cir. 2002) .............................................................9
    248 F.3d 915, 925 (9th Cir. 2001) ....................................................9

Kiobel v. Royal Dutch Petroleum Co.
    133 S. Ct. 1659 (2013) ................................................... .. 11, 12, 15

Komarova v. Nat'l Credit Acceptance, Inc.,
    175 Cal. App. 4th 324 (2009) ........................................................21

Microsoft Corp. v. AT & T Corp.,
    550 U.S. 437 (2007) .........................................................................11

Presbyterian Church of Sudan v. Talisman Energy,

    582 F. 3d 244 (2d Cir. 2009) ............... ............... ............... ............... .......7

    244 F. Supp. 2d 289 (2003) ............... ............... ............... ............... ......... 7

Sher v. Johnson

    911 F2d 1357 (9th Cir. 1990) ............... ............... ............... ............... .....13

Singer v. Live Nation Worldwide, Inc.,

    2012 WL 123146 (C.D. Cal. 2012) ............... ............... ............... ...............3

Superbalife Intl'l v. Powerpay,

    2008 WL 4559752 (CD Cal. 2008) ............... ............... ............... ...............4

Siderman de Blake v. Republic of Argentina,

    965 F.2d 699 (1993) ............... ............... ............... ............... ...............9

US v. Matta-Ballesteros,

    71 F.3d 754 (9th Cir. 1995) ............... ............... ............... ............... ...........10

United States v. Vasquez-Velasco,

    15 F.3d 833 (9th Cir. 1994) ............... ............... ............... ............... ...... .11


• **STATUTES**

California Code of Civil Procedure

    Section 430.10(g).   ............... ............... ............... ............... ...............  20

    Section 416.10 ............... ............... ............... ............... ............... ....... 17

Federal Rules of Civil Procedure Rule

    Rule 4(h)(1)(B)  ............... ............... ............... ............... ............... ....... 17

28 USC §1350 ............... ............... ............... ............... ............... ............... 11

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California  90212

REPLY TO OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

- **<u>SECONDARY SOURCES AND OTHER AUTHORITIES</u>**

*California Practice Guide: Federal Civil Procedure Before Trial,*

  §3:168 ..................................................................................................10

  §3:172.5 ...............................................................................................10

  §3:84 .............................................................................................13, 16

  §3:33.11 ...............................................................................................13

*California Practice Guide: Civil Procedure Before Trial,*

  §4:130.2 ...............................................................................................17

Article 5 of the Convention Against Torture ............................................ 8

## I.

## __INTRODUCTION__

On or about June 17, 2013 Plaintiff filed a Complaint averring 18 claims for relief against the Republic of Nicaragua and a host of private individuals and businesses, including 13 claims directed to defendants Codemet Nicaragua Sociedad Anonima ("*Codemet*") and Concetrados Superiores S.A. ("*Consa*")(Codemet and Consa are sometimes hereinafter collectively referred to as "*Defendants*").  As Plaintiff has later confirmed in his meet and confer communications, his Complaint is nearly incomprehensible and legally deficient for the following reasons: (a) claims rely upon averments contained in subsequent sections; (b) Plaintiff seemingly relies upon facts contained exclusively in Exhibits (effectively rendering the basis of any claim a mystery to anyone but perhaps the Plaintiff); (c) numerous claims for relief are based purely upon conclusory averments; and most fatally, (d) the Complaint is devoid of averments sufficient to establish any basis for personal jurisdiction over Codemet and Consa.

Accordingly, both Codemet and Consa have filed analogous motions to dismiss. Both defendants claim lack of personal jurisdiction.  In addition, Codemet claims lack of service, while Consa raises *FRCP* 12(b)(6) arguments concerning six of Plaintiff's claims as failing to state claims upon which relief could be granted.

In response, Plaintiff, who is litigating this case *in pro per*, instead seeks to rely upon *ad hominem* attacks of Defendants' counsel, claiming a "failure to meet and confer."  This is blatantly untrue: the true facts are that Defendants immediately sought to meet and confer about this matter but Plaintiff refused to grant them any extension of time to do so unless Defendants agreed to ADR, notwithstanding Defendants' expressed concerns about the lack of personal jurisdiction, proper service or other deficiencies of his Complaint.  For Plaintiff to claim Defendants' refusal to participate in his extortion is in bad faith is both troubling and meritless.

1    With respect to the utter lack of personal jurisdiction over the Defendants,

2  Plaintiff has sought to hide this deficiency under a flurry of international law

3  doctrines, none of which actually applies to Plaintiff's dispute with the Defendants.

4  Plaintiff can not and has not established "minimum contacts" necessary to confer

5  personal jurisdiction.

6    Plaintiff's argument with respect to the lack of service of defendant Codemet is

7  also without merit, as is his explanation of his vague claims which is as

8  incomprehensible as the claims themselves.  At least six (6) claims for relief must be

9  dismissed.

10    **II.**

11  **DEFENDANTS SATISFIED THE MEET AND CONFER REQUIREMENTS OF**

12  **LOCAL RULE 7-3;  IT IS PLAINTIFF WHO REFUSED TO PARTICIPATE IN**

13  **GOOD FAITH.**

14    In his Opposition to the Motion filed by Consa, Plaintiff repeatedly claims that

15  Defendants failed to meet and confer because Defendants' counsel "mismanaged" his

16  calendar.  That is only an *ad hominem* attack.  The true facts are that Plaintiff

17  announced at every point that he was insisting this case proceed, even in the absence

18  of a total lack of personal jurisdiction over the Defendants.  Thus, from the first

19  conversation with the Plaintiff on July 8, 2013 (the same day that Defendant's counsel

20  was retained), all of the Defendants' meet and confer efforts were without any

21  purpose– Plaintiff had already stated that he had made up his mind.

22    Nor were Defendants given any opportunity to "change Plaintiff's mind."

23  Despite the fact that Defendants' counsel informed Plaintiff that he had only been

24  retained two (2) days before a responsive pleading was due in the Codemet matter,

25  Plaintiff refused to grant a short extension of time unless Defendants agreed to ADR,

26  essentially attempting to extort Defendants "at gunpoint."  Moreover, when

27  Defendants did engage in meet and confer telephone conferences with Plaintiff,

28

1   Plaintiff refused to discuss this case and instead used telephone conferences as an

2   opportunity to read pre-prepared statements over the telephone to Defendants, refusing

3   to answer any question Defendants' counsel asked.  *See,* Declarations of Richard

4   Lloyd Sherman, filed in support of Motions.

5         Plaintiff simply refused to meet and confer in good faith, and rendered the entire

6   process a mockery, but still now attacks Defendant's counsel. Any regret by Plaintiff

7   is caused only by his own stubborn refusal to participate in good faith.

8         Plaintiff also contends without any evidence or basis in fact that no extension

9   should have been given because Defendant's counsel has "co-counsel in Florida."

10  Plaintiff does not cite any authority for this proposition, and it is not true.  Sherman

11  Law Group is a two-attorney firm, located exclusively in Beverly Hills, California, and

12  the sole attorney of records for Defendants in this case.

13        Plaintiff's outrageous claim that "Consa did not discuss with Plaintiff the

14  substance of the contemplated motion" (Opposition filed to Consa's Motion to

15  Dismiss ("Opposition"), p.7, ll. 26-28) is belied by the actual record before this Court,

16  which includes written communications confirming extensive communications as to

17  the substance of the instant Motion.  Plaintiff similarly falsely claims in connection

18  with the Codemet motion that Defendants' counsel "did not discuss with Plaintiff, the

19  substance of the contemplated motion," but this is also untrue. See, Declaration of

20  Richard Lloyd Sherman in support of Codemet's Motion to Dismiss, para. 5-6.

21        Plaintiff cites the unpublished opinion in *Singer v. Live Nation Worldwide, Inc.*,

22  2012 WL 123146 (C.D. Cal. 2012), but that case (a) concerned a summary judgment

23  motion and not a motion to dismiss (i.e. it was situated far differently procedurally),

24  (b) did not concern a Plaintiff who refused to grant an ordinary extension, and (c) had

25  counsel in that case (who waited until three (3) days to send a meet and confer letter

26  while opposing counsel was on vacation prior to filing a Motion for Summary

27  Judgment) who did "not provide any details regarding the dates or substance of these

28

1  purported conversations" in his declaration (whereas Defendants' counsel has
2  provided extensive declarations setting forth the substance of the conversations held
3  with Plaintiff).
4       Plaintiff also cites the unpublished opinion in *Alcatel-Lucent USA, Inc. v.*
5  *Dugdale Commc'ns, Inc.*, 2009 WL 3346784 (C.D. Cal. 2009) but in that case, (a) the
6  parties seem to have discussed the matter for about four (4) months before a
7  responsive pleading was due, and (b) the only meet and confer communication was a
8  telephone call the day the motion was filed.
9       Plaintiff also cites the unpublished opinion in *Superbalife Intl'l v. Powerpay*,
10 2008 WL 4559752 (CD Cal. 2008), but in that case, the plaintiff <u>was</u> "willing to
11 discuss a brief extension" but Defendant filed a motion regardless.  This case is thus
12 not remotely on point.  In fact in that case, the Hon. Philip S. Gutierrez affirmed the
13 importance of good-faith extensions:

14       **"This Court is well-aware that strict deadlines cannot always be adhered**
15       **to.   <u>That is of course why continuances and extensions exist.</u>"**
16 (Emphasis added) Plaintiff conveniently ignores this language from the very case he
17 himself has cited because it reveals his misconduct.
18      Plaintiff asks that his request for default be entered but the fact that Plaintiff
19 requested default of the Defendants *after they had filed responsive pleadings* only
20 reveals the bad-faith strategy of game-playing with which Plaintiff has chosen to
21 proceed in this litigation.  Defendants' counsel has suggested that Plaintiff obtain
22 counsel to assist him in this matter, but he has obviously not done so to date.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1
2
3

## III.

## THE DOCTRINES CITED BY PLAINTIFF DO NOT CONFER PERSONAL
## JURISDICTION OVER THE DEFENDANTS.

4   A.   **"The Universality Doctrine Principle" Does not Apply to this Case.**

5   Plaintiff claims that the "Universality Doctrine Principle" applies to this case,

6   but does not cite any 9th Circuit opinion that has ever adopted this "doctrine." Plaintiff

7   instead relies largely on 11th Circuit cases as well as case law from New York. Even if

8   this Court is persuaded to adopt non-9th Circuit authority, the cases cited by Plaintiff,

9   discussed below, do not support his position.

10   In *Cabello v. Fernandez-Larios*, 402 F.3d 1148 (11th Cir. 2005), a lawsuit was

11   filed under the Alien Tort Claims Act (the "*ACTA*") by the survivors of a Chilean

12   economist who was executed by Chilean military officers, but only against <u>one</u> of the

13   Chilean military officers who was alleged to have participated in the execution. Why

14   were the other military officers not sued? The answer is both simple and obvious–

15   lack of personal jurisdiction:

16   "Fernández currently lives in Miami. The terms of his plea agreement for the

17   assassination attempt prevent him from returning to Chile. **As a result, he is the**

18   **only member of the Chilean military subject to personal jurisdiction in the**

19   **United States.**"

20   *Id.* at 1153, Ftnt.1. Thus, this case stands for the opposite proposition than that cited

21   by Plaintiff– it reinforces that notwithstanding whether a claim can be stated under

22   some authority of international law (e.g., the ACTA), Courts will still first ask whether

23   it has personal jurisdiction.

24   In *Aldana v. Del Monte Fresh Produce*, 416 F.3d 1242 (11th Cir. 2005),

25   Guatemalan banana plantation workers brought claims against Del Monte, a Delaware

26   company headquartered in Florida. Personal jurisdiction was again not at issue.

27   Furthermore, *Aldana* further undermines Plaintiff's position in at least one material

28

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212

REPLY TO OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

1  respect.  That case again discussed the ATCA.  The only claim for relief which

2  references that act in the Complaint with respect to Defendants is Plaintiff's ninth

3  claim for relief for false imprisonment and false arrest.[1]  However, in *Aldana*, the 11th

4  Circuit dismissed claims for "arbitrary detention" as not having stated a claim for

5  relief under the ATCA: "a single illegal detention of less than a day ... violates no

6  norm of customary international law so well defined as to support the creation of a

7  federal remedy."  Id. at 1247.  Thus, even if this cases did somehow apply, they do not

8  permit Plaintiff to state the very claim for relief against Defendants which references

9  the ATCA.

10          In addition, Plaintiff's claims that the "Universality Doctrine ... holds that all

11  states have jurisdiction over crimes and civil matters that are universally recognized to

12  be a crime against humanity."  However, both *Cabello* and *Aldana* explain that "to the

13  extent that crimes against humanity are recognized as violations of international law,

14  they occur as a result of 'widespread or systematic attack' against civilian

15  populations."  *Aldana,* 416 F.3d at 1247, citing *Cabello,* 402 F.3d at 1161.  Here,

16  Plaintiff has not averred any "widespread or systematic attack" against a <u>civilian</u>

17  <u>population</u>– only what appears to be a dispute between himself and the Government of

18  Nicaragua over the disposition of some property.

19          Moreover, with respect to any claims by Plaintiff that he was "tortured" or other

20  such torts were committed, *Aldana* again clarifies that ACTA liability is not created as

21  against private defendants like Codemet or Consa, but only as to the State itself:

22  "State-sponsored torture, ***unlike torture by private actors,*** likely violates international

23  law."  Id. at 1247 (emphasis added).

24  / / /

25  / / /

26  / / /

27

28  [1]      The act is also referenced in the 4th, 5th, 6th and 7th claims for relief but none of
          those claims are directed towards these Defendants.

1  Defendant also cites _Presbyterian Church of Sudan v. Talisman Energy_, 582 F.
2  3d 244 (2d Cir. 2009), a case filed by current or former residents of southern Sudan
3  "who were injured or displaced by Government forces in attacks on communities."
4  Personal jurisdiction, however, was discussed only in an earlier district court opinion
5  not cited by Plaintiff. _See,_ 244 F. Supp. 2d 289 (2003). While the district court found
6  that it had personal jurisdiction over the corporation in Talisman Energy, it did not do
7  so in connection with an analysis of any international law doctrine.  Once again, the
8  district court asked only whether there were minimum contacts:

9       [Defendant] conducts activities throughout the world, with operations in
10       Canada, the United States, the North Sea, Indonesia, Algeria, Trinidad,
11       Colombia, and Sudan. It is a public company and its shares are traded on the
12       Toronto and New York Stock Exchanges. Within the United States, Talisman
13       conducts ongoing and significant business through its wholly-owned
14       subsidiary...

15  Id. at 299-300.

16       Plaintiff thus can not rely upon this case to evade pleading minimum contacts.
17  Even if that were untrue, the 2nd Circuit required the plaintiff in _Talisman_ to prove that
18  the Defendant "acted with the 'purpose' to advance the Government's human rights
19  abuses."  Plaintiff has fallen far short of this pleading requirement.

20       Finally, Plaintiff asks this Court to consider a raft of cases from the United
21  Kingdom, Australia, and Canada, but provides absolutely no authority for the
22  proposition that a district court in California shares the civil procedure rules of those
23  countries, or how these cases require this Court to disregard the basic and fundamental
24  concept of minimum contacts.  Indeed, Plaintiff's own description of these cases
25  suggest that they are all wildly inapplicable. See, e.g., Plaintiff's description of _Flores_
26  _v. BP Exploration Co._ (Columbia, Claim No. HQ08X00328 (2008), which he
27  describes as having to do with a complaint of "serious environmental harm with

28

1  devastating impact on the local population." Here, it is unclear how any population
2  has been effected by the property dispute at issue, and this case seems to concern only
3  Plaintiff's private interests.

4  **B.**   **The Convention against Torture Does Not Apply to this Case.**

5  Defendant cites article 5 of the Convention Against Torture, which is apparently
6  an international instrument under the review of the United Nations. However, he does
7  not cite any authority that the Convention Against Torture can create personal
8  jurisdiction where none exists. He cites only French authority, which is obviously
9  inapplicable to an issue of U.S. federal civil procedure. Article 5 states,

10  Each State Party shall take such measures as may be necessary to
11  establish its jurisdiction over the offences referred to in article 4 in the
12  following cases:

13  (a) When the offences are committed in any territory under its
14  jurisdiction or on board a ship or aircraft registered in that State;

15

16  (b) When the alleged offender is a national of that State;

17  (c) When the victim is a national of that State if that State considers
18  it appropriate."

19  Thus, the only sub-part that could conceivably come at issue is sub-part (c)
20  which does <u>not</u> mandate a finding of personal jurisdiction but leaves it to the State to
21  deem what is "appropriate." This Convention also does not mandate action by
22  judiciaries, but instead requires parties to the Convention to "establish jurisdiction,"
23  i.e. the Convention anticipates and requires legislation from Congress, not actions by a
24  district court.

25  Even assuming *arguendo* that this Convention somehow applied to the instant
26  case, it can not excuse Plaintiff from averring personal jurisdiction for the very simple
27  reason that Plaintiff's fourth claim for relief for "Torture" is filed against "All
28  Defendants Except Codemet and Consa." (See Complaint, p. 13). Plainly the

1   Convention Against Torture can not establish jurisdiction over Defendants where even
2   Plaintiff has effectively conceded in his pleadings that Defendants were not
3   responsible for any "torture."
4       Finally, Plaintiff concludes this section by citing *John Doe I. v. UNOCAL*, 395
5   F.3d 932 (9th Cir. 2002).  There was no personal jurisdiction issue in that case.
6   Defendant Unocal wholly owned a California subsidiary named "Union Oil Company
7   of California."  Minimum contacts were once again not at issue.  In fact, in that case,
8   the 9th Circuit specifically noted that one of the four partners in a scheme which
9   apparently perpetrated various human rights abuses (slavery, torture, murder, rape)
10  had already been dismissed from the case "for lack of personal jurisdiction."  Id. at
11  943, *citing inter alia,*  248 F.3d 915, 925 (9th Cir. 2001).  In fact, the 9th Circuit upheld
12  that dismissal based once again not on vague citations to international law about
13  torture but based upon a traditional minimum contact analysis: "The bare existence of
14  minimum contacts is not sufficient to allow a court to exercise personal jurisdiction
15  over a defendant."  *Id.*

**C.    Plaintiff's *Jus Cogens* and *Law of Nations* Arguments are Irrelevant.**

17      Plaintiff's *jus cogens* argument is (a) directed exclusively towards subject
18  matter jurisdiction (which is not presently at issue) (*see,* Opposition, p. 12, l.. 19-20),
19  and (b) seems to repeat the same "torture" arguments as previously set forth. As
20  referenced above, Defendants have not been sued for torture.  Plaintiff cites *Siderman*
21  *de Blake v. Republic of Argentina*, 965 F.2d 699 (1993) but yet again, in that case, the
22  individual defendants had already been dismissed for lack of personal jurisdiction. Id.
23  at 704, ftnt. 2.  Moreover, the 9th Circuit once again reaffirmed that notwithstanding
24  the existence of subject matter jurisdiction or any statute relating to international law,
25  the "exercise of personal jurisdiction also must comport with the constitutional
26  requirement of due process."  Id. at 704 ftnt. 4.
27  / / /
28  / / /

1   Plaintiff's "law of nations" argument simply repeats that torture is a *jus cogens*

2   violation, i.e. it fails to explain how personal jurisdiction has been established.  It has

3   not.  Plaintiff cites *US v. Matta-Ballesteros*, 71 F.3d 754, 764 n.5 (9th Cir. 1995) but

4   that footnote does not concern personal jurisdiction, and in fact, stands, *inter alia,* for

5   the proposition that "kidnapping does not rise to the level of other jus cogens norms,

6   such as torture, murder, genocide, and slavery," i.e. it confirms that Plaintiff's

7   arguments, even if they had any merit, would not even apply to any claim but his claim

8   for torture (which has not been filed against the Defendants).

9   **D.   The Effects Doctrine is Inapplicable.**

10   Plaintiff cites the Effects Doctrine, but ignores its requirements.  "If the

11   nonresident defendant operates entirely outside the forum state, the mere fact that its

12   acts 'cause an effect' within the state, or even that such effect was 'foreseeable,' is not

13   enough by itself to support local personal jurisdiction." *California Practice Guide:*

14   *Federal Civil Procedure Before Trial.* §3:168 (The Rutter Group: 2013)("***Practice***

15   ***Guide***").  The Effects Doctrine only applies where a tort is "expressly aimed" at the

16   forum state: "It is not enough that plaintiff resides in the forum state and may feel

17   effects there. The defendant must direct the tortious activity to the forum state."  Id. at

18   §3:172.5, citing  *Casualty Assurance Risk Ins. Brokerage Co. v. Dillon*, 976 F2d 596,

19   601 (9th Cir. 1992).

20   Defendant can not satisfy this burden– his Complaint is devoid of any torts

21   actually "aimed" at California.  He merely happens to reside here (and it is unclear

22   from the Plaintiff's Complaint when he became a California resident).

23   Plaintiff then contends that "the contract concerning the land" at issue contained

24   a provision which allowed for disputes to be "treated before the United States Court of

25   Justice," citing Exhibit 2 to his Complaint.  Opposition, p.13, ll.15-18.  However,

26   Exhibit 2 is nothing more than a "Deed Upon Sale" between the Plaintiff and a third

27   party residing in "the City of Chinandega" (either Mr. Luis Alberto Romero Arauz

28

and/or Takashi Shimazaki), deeding the Plaintiff some land.  Defendants are not a party to this agreement, and Plaintiff has cited no authority that they are somehow bound by its contents, especially not to the extent that would confer personal jurisdiction in its utter absence.  The citation to this agreement thus has no validity.

**E.    The Passive Personality Principle is Inapplicable.**

Plaintiff then claims that the "Passive Personality Principle" holds that a "State may assert jurisdiction over persons outside of a state's territory on the basis that its citizen has been harmed."  Opposition, p. 13, ll. 24-26.  This principle, however, is intended for crimes such as hijacking, terrorism, or genocide, not a mere property dispute.  The passive personality principle "has not been accepted as a sufficient basis for extraterritorial jurisdiction for ordinary torts and crimes. "  *United States v. Vasquez-Velasco*, 15 F.3d 833, 841 (9th Cir. 1994).

Plaintiff has not averred any crime on the level of an "act of terrorism."  At best, he has averred only "ordinary torts and crimes."  Furthermore, even assuming *arguendo* this principle did apply, Plaintiff can not explain how why any of the non-criminal acts he has averred should not be dismissed.

**F.    The Torture Victim Protection Act is Inapplicable.**

Plaintiff then claims that the Torture Victim Protection Act of 1991(28 USC 1350) is somehow applicable.  Again, Plaintiff has not stated a claim of torture against the Defendants.  *See,* Plaintiff's 4th claim for relief.  Regardless, that statute is legally inapplicable.  In interpreting 28 *USC* §1350 the Supreme Court has held that any "case seeking relief for violations of the law of nations occurring outside the United States is barred." *Kiobel v. Royal Dutch Petroleum Co.,* 133 S. Ct. 1659, 1669 (2013).  The Supreme Court was guided by the "presumption that United States law governs domestically but does not rule the world," *Id.,* citing *Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437, 454 (2007).

/ / /

/ / /

1   Thus, in *Kiobel,* the Supreme Court affirmed the dismissal of claims by Nigerian
2   nationals residing in United States that had sued Dutch, British, and Nigerian
3   corporations pursuant to 28 USC §1350.  Even though plaintiff in that case had
4   alleged that those corporations had aided and abetted the Nigerian government in
5   committing violations of the law of nations in Nigeria, "all the relevant conduct took
6   place outside the United States. And even where the claims touch and concern the
7   territory of the United States, they must do so with sufficient force to displace the
8   presumption against extraterritorial application."  Id. *Kiobel* thus compels the
9   dismissal of the Defendants here.

10  **G.       The Impact Territoriality Principle is Inapplicable.**

11  Plaintiff then claims that the "impact territoriality principle" holds that "a state
12  is entitled to make and apply law to events that occurred abroad if necessary to protect
13  its essential interests." (Opposition, p.15) California has no interest in who owns a
14  factory in Nicaragua.  Plaintiff does not identify any interest California could
15  conceivably have in this dispute, other than the fact he happens to reside here (which
16  as set forth above is not enough), and Plaintiff's statement of law flies in the face of
17  the Supreme Court's ruling in *Kiobel* and the extraterritorial presumption affirmed
18  therein.  Plaintiff does not provide any authority that this principle is sufficient to
19  confer personal jurisdiction when none exists.

20  **H.       The Foreign Sovereign Immunities Act is Inapplicable.**

21  Finally, Plaintiff contends that "sovereign immunity" can be deprived where
22  takings of property are at issue, citing *Argentine Republic v. Amanda Hess Shipping,*
23  488 US 428 (1989).  That case concerned the question of whether the Argentine
24  Republic could be sued, i.e. it concerned an issue of sovereign immunity.  This is an
25  argument thus purely directed towards the Government of Nicaragua– not the business
26  entity Defendants.

27  / / /

28  / / /

1   In response, Plaintiff claims that the separate existence of Defendants and the

2   Government of Nicaragua is irrelevant to a personal jurisdiction analysis because

3   Defendant is a "joint tortfeasor." However, jurisdiction can not be "boot-strapped" in

4   this way. The fact that jurisdiction might exist for one or more of the other defendants

5   does not somehow create minimum contacts for Defendants where none exists. As an

6   analogous example, in lawsuits against a partnership, the fact that a Court might have

7   jurisdiction over a *partnership* does not mean that it has personal jurisdiction over

8   each partner: "The fact the partners are vicariously liable for the partnership debts is

9   not enough. If they are sought to be held liable individually, minimum contacts must

10  be established with each partner." *Practice Guide*, §3:84, citing, *inter alia, Sher v.*

11  *Johnson* (9th Cir. 1990) 911 F2d 1357, 1366 (Florida law firm represented California

12  client; while Court had personal jurisdiction over the law firm, that "did not subject

13  the individual partners to California jurisdiction").

14   Here, the *gravamen* of the foregoing is that Plaintiff is seeking to escape

15  averring proper personal jurisdiction through procedural gamesmanship. None of

16  these procedural games find any support in the law or any other relevant authority.

17  ### IV.

18  ### PLAINTIFF'S OPPOSITION CONFIRMS THAT DEFENDANTS HAVE

19  ### NO MINIMUM CONTACTS WITH CALIFORNIA.

20   To satisfy due process, a foreign defendant must either: "have purposefully

21  availed itself of the benefits and protection of U.S. law with respect to the transaction

22  sued upon (thereby subjecting it to 'specific jurisdiction'") or "have had continuous

23  and systematic business contacts with the U.S. (sufficient to subject it to "general

24  personal jurisdiction" on unrelated claims.") *Practice Guide*, §3:33.11.

25   Plaintiff has not produced any argument or evidence supporting a finding of

26  general personal jurisdiction. Instead, presumably believing that specific jurisdiction

27  exists, Plaintiff attempts to argue essentially the same seven-factor test of *Brand v.*

28

1 | *Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) argued by Defendants in their

2 | moving papers. However, even Plaintiff's arguments related thereto are unpersuasive:

3 |      1)   **Convenience to Plaintiff**: First, Plaintiff again cites the contract attached

4 | as Exhibit 2 to which Defendants are not a party, but yet again does not explain how

5 | or why that contract should bind the Defendants. Plaintiff then suggests that he can

6 | not sue in Nicaragua because "official authorities decided to engage in delaying

7 | tactics," but does not cite any evidence for this proposition or for the proposition that a

8 | mere difference in the "speed" of relief is enough to justify creating personal

9 | jurisdiction.

10 |     In fact, in support of his proposition that Nicaragua is an inappropriate forum,

11 | Plaintiff cites Exhibits 21, 27, 38 and 39, all of which appear to be documents filed

12 | with Courts in Nicaragua, thus revealing his ability to file pleadings in Nicaragua

13 | notwithstanding his present pleas of "inconvenience."

14 |     Plaintiff then contends that the "Nicaragua Supreme Court already ruled that

15 | Plaintiff may proceed in other jurisdiction," but (a) if he has attached this supposed

16 | ruling, he does not cite it in this section of his Opposition (Opposition, p.16, ll.3-15),

17 | and (b) this Court has no obligation to disregard the U.S. Federal Rules of Civil

18 | Procedure or Defendants' due process rights thereunder based upon a ruling of the

19 | Nicaragua Supreme Court. The United States Supreme Court controls, not that of

20 | Nicaragua, and the U.S. Supreme Court requires Minimum Contacts.

21 |     **2) Relative Availability of Evidence, Ease of Access to Alternative Forum,**

22 | **and Interest of Plaintiff in Suing Locally:** Plaintiff does not and has not addressed

23 | why this forum would be convenient in light of the simple fact that all of the parties,

24 | witnesses and other evidence all are presumably located in Nicaragua or elsewhere in

25 | South America. Instead, he simply repeats his arguments relating to his belief that

26 | California is more convenient for him personally, and fails to address this point in any

27 | way.

28 |

1   Plaintiff also contends that his life is in danger in Nicaragua, but this only

2   highlights the problems Defendants will face if compelled into this case: Plaintiff will

3   be the only available "source" for these extreme and incendiary averments because all

4   of the other evidence and witnesses of this purported misconduct are in Nicaragua.

5   **3) Interest of California in Assuming Jurisdiction**:  Plaintiff's argument is

6   only that California automatically has an interest in this dispute because he is a citizen

7   of California and a "crime against a citizen is a crime against the state." (Opposition,

8   p.17, l.1).  Plaintiff does not cite any authority for this claim, and in fact, the foregoing

9   international authority says otherwise.  As referenced above, Courts routinely decline

10  to exercise jurisdiction over foreign corporations where there is an absence of

11  minimum contacts.  See, _Kiobel v. Royal Dutch Petroleum Co., supra,_ 133 S. Ct. at

12  1669.

13  **4) Avoidance of Multiplicity of Lawsuits:**  Plaintiff's argument here does not

14  address this factor at all.  He simply repeats his averments concerning Defendants

15  being "joint tortfeasors," which fails to set forth a basis for personal jurisdiction as set

16  forth above.  Plaintiff then threatens to sue Defendants in Florida, but based upon a

17  strange claim that "Defendants' offices are located" in Florida, for which he has not

18  provided any evidence.

19  **5) The Extent to Which the Cause of Action Arose Locally and Relevant**

20  **Contact:**  Plaintiff again cites Exhibit 2, a contract to which Defendants were not

21  parties, as if the fact that a contract once existed at any point in time should somehow

22  obligate Defendants to defend lawsuits in California. This is a contention without any

23  legal merit.  Plaintiff ignores that the property at issue is located in Nicaragua.

24  Plaintiff then incorrectly claims that Defendants are organized under the laws of

25  the United States.  Plaintiff ignores that even Codemet International (the Florida entity

26  which Plaintiff incorrectly served) has not been organized in the United States for

27  nearly a decade.  As set forth in the moving papers, Codemet International was

28

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212

REPLY TO OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

1    dissolved in 2004– before any of the facts averred in Plaintiff's Complaint– and it is

2    not related to defendant Codemet. Furthermore, Plaintiff seeks to improperly conflate

3    the entire United States with the State of California.  As set forth in the moving

4    papers, defendant Consa does not have an office in California, does not conduct

5    business in California, does not solicit business in California, and has no other direct

6    activities into California that would be  sufficient to warrant the exercise of general

7    jurisdiction by this Court.

8                                                    **V.**

9                              **JOINT VENTURE LIABILITY**

10            Plaintiff argues that "it is well-established as a federal common law principle

11   that a member of a joint venture is liable for acts of its co-venturers." (Opposition,

12   p.17, ll. 21-22). This is a liability argument– it is irrelevant in the absence of personal

13   jurisdiction.  See, *supra, Practice Guide*, §3:84 ("The fact the partners are vicariously

14   liable for the partnership debts is not enough. If they are sought to be held liable

15   individually, minimum contacts must be established with each partner"); *see also,*

16   *Goehring v. Superior Court (Bernier)*, 62 Cal. App. 4th 894, 904-05 (1998)

17   ("Jurisdiction over a partnership does not necessarily permit a court to assume

18   jurisdiction over the individual partners. Liability and  jurisdiction are independent.

19   Liability depends on the relationship between the plaintiff and the defendants and

20   between the individual defendants; jurisdiction depends only upon each defendant's

21   relationship with the forum. Although individual partners are jointly and severally

22   liable for the torts of the partnership, jurisdiction over each defendant must be

23   established individually.  Thus, a California court has jurisdiction over only those

24   individual partners who personally established the requisite minimum contacts with

25   California.")

26

27

28

# VI.

## **DEFENDANT CODEMET WAS NOT PROPERLY SERVED.**

As set forth in the moving papers, defendant Codemet has never been served with process in the instant case.  Plaintiff instead served an unrelated Florida entity that was dissolved nearly nine (9) years ago. Such service does not satisfy either the service requirements of *California Code of Civil Procedure* §416.10 nor *Federal Rules of Civil Procedure Rule* 4(h)(1)(B).

In response, Plaintiff only continues to insist that according to his own Certificate of Service, "CODEMET's attorney in Florida, Mr. Mark E. Fried admitted to the process server that he was the Agent of Service of Process for defendant." Even assuming *arguendo* this were true, Plaintiff still has not addressed that Codemet International has not existed since 2004, and there is no evidence of any relationship between Mr. Fried and defendant Codemet as opposed to Codemet International. Plaintiff simply ignores the separate existence of those two entities.

Plaintiff also seeks to avoid the service requirements of FRCP Rule 4, by claiming that Codemet has "actual notice" of this lawsuit. Plaintiff's argument is invalid under California law: "Nor is service on a person's lawyer sufficient where the lawyer has no actual or ostensible authority to accept service in the action. That defendant knows the lawsuit is pending does not excuse service of summons requirements." *California Practice Guide: Civil Procedure Before Trial.* §4:130.2. Plaintiff cites *Borzeka v. Heckler*, 739 F.2d 444 (9th Cir. 1984), but that case only concerns "where the necessary parties *in the government* have actual notice." It eases the burden upon those suing the United States government, and does not excuse Plaintiff's failure here.

//

//

# VII.

## AT LEAST SIX CLAIMS FOR RELIEF MUST BE DISMISSED
## FOR FAILURE TO STATE A CLAIM

Defendant Consa identified severe deficiencies in Plaintiff's Complaint, specifically to Plaintiff's 2nd, 8th, 13th, 14th, 16th, and 17th claims for relief. Plaintiff begins each section of his argument with various vituperative *ad hominem* attacks on Defendants' counsel, again essentially complaining about his own refusal to meet and confer in good faith. As set forth below, however, Plaintiff's actual arguments fail to meet their burden.

### A.    The 2nd Claim for Relief for Conversion.

As set forth above, Plaintiff's Complaint is an extremely difficult pleading to comprehend, especially because Plaintiff apparently expects the reader to ignore the four corners of each claim for relief, find factual averments contained in different, later-stated claims and/or exhibits, and then somehow know to retroactively apply those averments to previously-read claims. For example, Plaintiff's 2nd claim for relief is set forth between paragraphs 52 and 58. Plaintiff complains that Defendants did not realize that paragraph 129 should have been included therein (a paragraph claiming ownership of "Shrimp machinery").

Even setting aside this deficiency, Plaintiff has not addressed the issue raised by Defendants in the moving papers, namely Plaintiff himself has averred in Paragraph 44 of the Complaint that a Pro-Temp Judge seized a "multi-processing plant" belonging to the Plaintiff on July 20, 2011. Paragraph 39 defines the "Shrimp machinery" as being part of that plant. Thus, based upon Plaintiff's own (very confusing) averments, it appears that Plaintiff did not have a right of possession to the plant (including the Shrimp machinery) at the relevant times averred in his Conversion claim (i.e. September 2011, per paragraph 45).

Plaintiff angrily complains about "Defendants' attempt to confuse this Court about possession of Mr. Sequeira's house, possession of his machinery, and

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212

REPLY TO OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

1  possession of the multiprocessing plant that are separate and apart," but it is

2  impossible to reconcile that argument with paragraph 39 which does not define them

3  separately but defines all of those items collectively.

4  **B.    8th Claim for Relief for Assault & Battery**

5  The Eighth Claim for Relief for Assault & Battery states that the assault &

6  battery was "the continuum conduct and acts by the defendants" described in

7  paragraph 76.  Paragraph 76, however, identifies an incident involving an alleged

8  assault perpetrated by the "Mayor of El Viejo, German Mufioz Moncada, ("Mr.

9  Moncada") and the City Attorney, Mr. Ismael Ulloa Perez, ("Mr. Ulloa") and some

10  members of the Police department of El Viejo."  Notably, neither CONSA nor

11  CODEMET are referenced therein.

12  In response, Plaintiff angrily points to Exhibits 37 and 45, but even if the

13  requirements that a Complaint describe the factual contentions at issue could be set

14  aside just by attaching exhibits, these Exhibits are still insufficient.  Exhibit 37 appears

15  to be a request for records while Exhibit 45 simply seems to be a statement by the

16  Plaintiff (and it is unclear where, if anywhere, Consa or Codemet are mentioned

17  therein).  Neither seems applicable to resolving the foregoing issue.

18  Plaintiff then claims that "Defendant attempts to ignore the fact that Defendant

19  is a joint tortfeasor" but Plaintiff's meaning is unclear.  Is Plaintiff attempting to hold

20  Defendant liable for the acts of third parties?  If so, he must state a factual basis for

21  doing so.  Defendants respectfully contend that his Complaint has failed to do so

22  (though as referenced above, the Complaint has been confusingly drafted).

23  **C.    The 13th Claim for Negligent Interference with Contract.**

24  The thirteenth claim for relief for negligent interference with contract fails to

25  state what duty (if any) Consa purportedly owed to the Plaintiff.  Plaintiff now

26  contends that he owed a duty as a "tenant" to "the whole world to act as a reasonable

27  person would." (Opposition, p.22, ll. 20-21)  It is well settled that a "landlord owes a

28  duty of care to a tenant to provide and maintain safe conditions on the leased

1   premises." *See, e.g., Becker v. IRM Corp.* (1985) 38 Cal.3d 454, 467.  Defendants do

2   not cite any authority for the proposition, however, that a tenant owes a duty to a

3   landlord, let alone to the "whole world" as Plaintiff contends.

4       The remainder of the Plaintiff's argument is purely conclusory averments that

5   Defendants owed a duty, but without any authority cited as to the basis of the duty

6   owed.

7       **D.**    **The 14th Claim for Relief for Breach of Contract.**

8       The fourteenth claim for relief is for "Breach of Express, Written, Oral and

9   Implied In Fact" Contract.  As set forth in the moving papers, the *California Code of*

10   *Civil Procedure* specifically permits objections where a Complaint fails to specify, *i.e.*

11   "In an action founded upon a contract, it cannot be ascertained from the pleading

12   whether the contract is written, is oral, or is implied by conduct." *California Code of*

13   *Civil Procedure section* 430.10(g).

14       In response, Plaintiff again just tiresomely attacks Defendants' counsel for the

15   deficiencies contained in his own Complaint, making strange arguments that

16   "Defendants attempt to ignore the checks that CONSA and CODEMET paid to

17   Plaintiff." (Opposition, p. 24, ll. 2-3) A check isn't a contract, so this citation to

18   checks still leaves it a mystery the nature of the contract at issue.  Plaintiff avers that

19   the "pleadings must be liberally interpreted" but as set forth, the 14th claim for relief

20   leaves Defendant no way of knowing what kind of contract Plaintiff is even averring

21   to be at issue and thus must be dismissed pursuant to *CCP* §430.10(g).

22       **E.**    **The 16th and 17th Claims for Relief for IIED**

23       Plaintiff's 16th claim for relief for intentional infliction of emotional distress is

24   set forth in paragraphs 178 to 201 of the Complaint.  That portion fo the Complaint is

25   silent as to any "criminal actions," as Plaintiff now contends in his Opposition, but

26   claims only that Plaintiff suffered emotional distress because defendants Codemet and

27   Consa purportedly engaged in litigation with the Plaintiff.  However, "[i]t is well

28   settled that the litigation privilege bars causes of action for intentional infliction of

emotional distress." *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 341, 95 Cal. Rptr. 3d 880, 892 (2009). Plaintiff does not address whether he is also seeking distress arising therefrom in his Opposition, or why this part of his claim should not be dismissed.

**VIII.**

**CONCLUSION**

Thus, as set forth above, this case must be dismissed with prejudice for both defendants Consa and Codemet for lack of personal jurisdiction. In the alternative, this case should be dismissed against Codemet for lack of service. In the further alternative, the 2nd, 8th, 13th, 14th, 16th, and 17th claims for relief should be dismissed for a failure to state a claim upon which relief can be granted.

Dated: August 16, 2013                    **SHERMAN LAW GROUP**

By: _Richard Lloyd_

/ **RICHARD LLOYD SHERMAN, ESQ.**
Attorneys for Defendants CONCENTRADOS
SUPERIORES and CODEMET NICARAGUA
SOCIEDAD ANONIMA, S.A.

# PROOF OF SERVICE

I am a resident of the State of California.  I am over the age of 18 and not a party to the within action.  I am employed in the office of a member of the bar of this court at whose direction this service was made.  My business address is: 9454 Wilshire Boulevard, Suite 850, Beverly Hills, California 90212.

On **August 16, 2013,** I served **DEFENDANTS CONCENTRADOS SUPERIORES and CODEMET NICARAGUA SOCIEDAD ANONIMA'S JOINT REPLY TO PLAINTIFF'S OPPOSITION TO  MOTION TO DISMISS** upon the following party in this action as follows:

**JAIRO SEQUEIRA**
**24610 TOWN CENTER DRIVE, #5103**
**VALENCIA, CA 91355**

X       **(By Mail)**    I am readily familiar with the firm's practice of collection and processing  correspondence for mailing.  Under that practice it would be deposited with the UNITED STATES POSTAL SERVICE on that same day with postage thereon fully prepaid at Beverly Hills, California in the ordinary course of business.  I am aware that on motion of the party served,  service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

X       **(Via E-Mail)** I e-mailed such documents to the e-mail address soyjairosequeira@gmail.com.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

**Executed on August 16, 2013, at Beverly Hills, California.**

Abhay Khosla